2020 IL App (1st) 192353-U

FIFTH DIVISION
June 30, 2020

No. 1-19-2353

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| GEORGE E. FLOYD, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 7074 |
| HILL FUNDING, LLC, RICARDO HURTADO a/k/a | ) | |
| RICARDO HURZAVO, and UNKNOWN OWNERS, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable Eve M. Reilly, |
| (Hill Funding, LLC, Defendant-Appellee.) | ) | Judge, Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court did not err in granting summary judgment to the defendant in this quiet title case, because the plaintiff possessed no ownership interest in the subject property after he breached the underlying contract for deed.

¶ 2                                    BACKGROUND

¶ 3    In 2010, plaintiff-appellant George E. Floyd entered into an "Agreement for Deed" with Home Solutions Partners III REO, LLC to purchase a residential property in Chicago for $29,000. The contract and accompanying note required Floyd to (1) make monthly payments of principal and interest totalling $247.77 to Home Solutions until the year 2040, (2) pay all real

estate taxes and insurance for the property, and (3) keep the property in good condition. The contract further provided that "if [Floyd] shall first make the payments and perform the covenant(s)," then Home Solutions would deed the property in fee simple to Floyd.

¶ 4    The contract contained a forfeiture clause providing that in case Floyd failed to make any of the payments or to perform any of the covenants, the eventual transfer of the property to Floyd could, at Home Solutions' option, "be forfeited and terminated" and Home Solutions could record a notice of forfeiture which would constitute "conclusive proof of default by [Floyd] and [Home Solutions'] election to terminate all rights" in the property existing under the contract. In that event, Floyd would forfeit all payments already made by him, and Home Solutions could retain those payments "in full satisfaction and liquidation of all damages sustained by them, and the premises aforesaid without being liable to any action therefore." Further, Floyd would become a month-to-month tenant required to pay rent equal to the regular monthly payment. Notably, unlike standard articles of agreement for deed, the contract contains no provision explicitly granting Floyd *any* possessory interest in the property before the anticipated deed transfer in 2040. The contract also includes a notarized rider reciting that Floyd declined to obtain the services of an attorney to advise him in the transaction. The contract was recorded.

¶ 5    Home Solutions eventually transferred its interest in the property by deed to the defendant-appellee Hill Funding, LLC. In 2018, Hill Funding issued a notice of forfeiture reciting that Floyd failed to make payments as required under the contract and demanding that he surrender the property within 30 days.

¶ 6    Shortly thereafter, Floyd filed a one-count complaint against Hill Funding which is essentially a claim for quiet title. Floyd sought declarations that he had superior title to Hill Funding in the subject property and that the notice of forfeiture was invalid. Floyd alleged that

he had arranged to have the required monthly payment automatically deducted from a savings account, and that he had changed the payment directions over time to reflect successive loan servicers, but that he had not received notice that Hill Funding was the newest servicer. The complaint also alleged that any transferee servicer was required to notify him of the transfer under 12 U.S.C. §2605(c)(1), a provision in the federal Real Estate Settlement and Procedures Act ("RESPA"). It further alleged that after the notice of forfeiture was issued, the water was shut off and an individual (later identified as defendant Rick Hurtado) had asserted his own ownership of the property.

¶ 7    Hill Funding answered the complaint, denying the substantive allegations. In response to Hill's request to admit facts, Floyd admitted the following: (1) he did receive a transfer notice from the previous servicer, Statebridge, transferring servicing to Hill on or about December 6, 2017; (2) he had not paid the full purchase price as required by the contract and that certain monthly payments had not been made; (3) his primary purpose for purchasing the property was to use it for income generation; and (4) he never resided at the property and rented it to a tenant. Hurtado did not participate in the proceedings below.

¶ 8    Hill Funding filed a motion for summary judgment, arguing that the underlying contract gave Floyd no interest in the property superior to its own, and, in fact, no interest whatsoever until all 30 years of required payments had been made in 2040. Therefore, Hill Funding claimed, its declaration of forfeiture was valid and permitted by the contract. The motion was not accompanied by an affidavit, but relies on Floyd's admissions of fact and the contract itself, whose authenticity was undisputed.

¶ 9    In response, Floyd contended that when the contract was executed, the contract immediately gave him "equitable title" in the property and that Hill's interest became only an

3

interest in personal property, namely the monthly payment stream running until 2040. He also contended that Hill Funding was required to give him notice before declaring a forfeiture and there was a material issue of fact regarding whether such notice was given. However, Floyd did not point to any particular provision of the contract which required any such notice, nor to any characteristic of the notice that was defective or missing. Floyd's response contained no supporting affidavit from himself or anyone else.

¶ 10    After briefing, the circuit court granted the defendant's motion for summary judgment, specifically finding that RESPA did not apply to the transaction, that the contract did not require a specific notice prior to a declaration of forfeiture, and that there was no issue of material fact that Floyd breached the contract after receiving "the notice from Statebridge". This appeal followed.

¶ 11                                ANALYSIS

¶ 12    On appeal, Floyd contends that the circuit court erred in granting summary judgment because (1) he acquired an equitable interest in the property when he signed the contract, (2) Hill did not provide him with a notice of forfeiture that was "proper under the agreement," (3) RESPA required Hill Funding to send him a pre-forfeiture notice, and (4) even if RESPA did not apply to the transaction by its own terms, it was incorporated into the contract under the doctrine of custom and usage.

¶ 13    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty*

*Mutual Insurance Co.,* 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id.* We review a trial court's entry of summary judgment *de novo. Id.*

¶ 14    A quiet title action is an equitable proceeding in which a party seeks to remove a cloud on title to a property. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009). "A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *Id.* A *prima facie* case to quiet title requires that (1) the plaintiff possesses good or true title to the property and (2) the plaintiff's title, whether legal or equitable, is superior to that of other claimants. *Dudley v. Neteler,* 392 Ill. App. 3d 140, 143 (2009). The plaintiff must recover on the strength of his own title. *Reynolds v. Burns*, 20 Ill. 2d 179, 193 (1960).

¶ 15    When construing a contract, our primary duty is to give effect to the parties' intent at the time they entered into it, as shown by its language. *Monroe Dearborn Ltd. Partnership v. Board of Education of the City of Chicago*, 271 Ill. App. 3d 457, 462 (1995) (citing *In re Doyle,* 144 Ill. 2d 451 (1991)). The interpretation of a contract presents a question of law and is therefore reviewed *de novo. Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

¶ 16    We first address Floyd's claim that he had equitable title in the property. Floyd relies primarily on the doctrine enunciated in *Shay v. Penrose,* 25 Ill. 2d 447, 450 (1962), that under articles of agreement for deed, "equitable conversion takes place at the instant a valid and enforceable contract is entered into and *** the buyer at that time acquires an equitable title". Unlike here, the contract in *Shay* was of "the type of contract for deed in common usage by the profession" and it granted the buyers possession of the property. Our supreme court later explained:

"A difference exists in the established law of property between the legal significance of a sale of an interest in land and a contract to sell an interest in land. Whereas the sale of the interest in land results in the actual transfer of the title from the grantor to the grantee, the contract for sale is only an agreement to be performed in the future and which, if fulfilled, results in a sale." *8930 South Harlem, Ltd. v. Moore*, 77 Ill. 2d 212, 219 (1979) (citing *In re Estate of Frayser*, 401 Ill. 364, 373 (1948)).

See also *In re Estate of Martinek*, 140 Ill. App. 3d 621, 627 (1986) (citing *8930 South Harlem* and holding that there is a clear legal distinction between a sale of interest in land and a contract to sell interest in real estate; the former results in the actual transfer of title, whereas the latter is merely an executory agreement that will result in a sale once performance of the contract is complete). When a contract for the sale of land permits the seller to declare a forfeiture upon default, then the declaration of forfeiture following such default puts an end to the interest of the purchaser. *Brown v. Jurczak*, 397 Ill. 532, 540 (1947).

¶ 17 Floyd's contract was one to sell an interest in land, not a sale of the land. It was clearly an agreement to be performed in the future—in fact, over the course of 30 years. Additionally, as noted above, the contract was unusual as it did not explicitly grant Floyd any possessory interest in the property during the 30-year payment period. Floyd's right to possess the property during that time might be fairly implied from other provisions requiring him to insure the property and keep it in good condition, but on the issue before us, we are constrained by the plain language of the contract. The contract clearly provides that Floyd would not acquire title to the property until he paid the purchase price and/or made all monthly payments. In his response to request to admit facts, Floyd admitted that he had neither made all the required payments to date nor paid the loan in full. Therefore, we reject Floyd's claim that he had an equitable title to the property.

¶ 18    Floyd also takes issue with the notice of forfeiture, claiming that it was defective in some way. Floyd returned to this theme repeatedly in the court below and raises it again in this court. However, as Hill Funding correctly notes, nowhere does Floyd explain exactly what was wrong with the notice. The contract, in fact, contains no provision that the lender actually transmit notice of default or forfeiture to Floyd. It provides as follows: "Seller may, at their own option, cause a written declaration to be recorded in the office of the Clerk of Court of Cook County, to evidence the existence of his/hers/theirs election to terminate all rights hereunder in accordance herewith." When an appellant presents an argument merely by listing it or vaguely alleging it, it is not "argued" as required by Illinois Supreme Court Rule 341 (eff. May 25, 2018), and is forfeited. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36. Since Floyd fails to demonstrate how the recorded declaration of forfeiture was defective, we cannot find that the circuit court erred as to this issue.

¶ 19    We next address Floyd's claim regarding the notice of the transfer of servicing. He claims that he is entitled to relief under a provision of RESPA (12 U.S.C. §2605(c)(1)), which requires that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." He seems to argue that because the notice came from the transferor—Statebridge—rather than the transferee, Hill Funding, the notice was defective.

¶ 20    We are not persuaded by this argument. Even assuming the notice was sent by the wrong entity, Floyd admitted that he has never lived at the property and has rented it out for income. Another provision of RESPA, 12 U.S.C. § 2606, provides that section 2605(c)(1)'s notice requirement does not apply "to credit transactions involving extensions of credit [ ] primarily for business, commercial, or agricultural purposes."

¶ 21    To avoid this result, Floyd argues that a RESPA-like notice provision was incorporated into the contract under the doctrine of custom and usage. But evidence of custom and usage is only admissible to explain uncertain or ambiguous terms. *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 33. And it was Floyd's burden to establish the existence of custom and usage by competent evidence. See, *e.g.*, *Pickus Construction & Equipment v. American Overhead Door*, 326 Ill. App. 3d 518, 524 (2001) ("If plaintiff should have known to interpret defendant's bid in light of the custom to which defendant alludes, defendant failed to introduce any substantial evidence of this at trial."). He presented no evidence whatsoever that a custom or practice exists to impliedly incorporate RESPA's servicing notice provision into the type of real estate contract at issue here.

¶ 22                                   CONCLUSION

¶ 23    The circuit court did not err in granting summary judgment to the defendant and rejecting his claim for quiet title and other relief. We affirm the judgment of the circuit court.

¶ 24    Affirmed.